## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **DUSTIN REYNOLDS** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:20-cv-271** |
| | § | |
| **WOOD COUNTY, TEXAS,** | § | |
| **ANGELA SPEAKMAN, Individually,** | § | |
| **BRADLEY COX, Individually,** | § | |
| **CHELSEA FULLER, Individually,** | § | |
| **MARK TAYLOR, Individually, and** | § | |
| **LOGAN MILLER, Individually,** | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Dustin Reynolds, Plaintiff, complaining of WOOD COUNTY, TEXAS, ANGELA SPEAKMAN, Individually, BRADLEY COX, Individually, CHELSEA FULLER, Individually, MARK TAYLOR, Individually, LOGAN MILLER, Individually, and for causes of action will respectfully show unto the Court as follows:

## I.
## PARTIES

1. Plaintiff Dustin Reynolds is a resident of Wood County.

2. Defendant Wood County, Texas is a political subdivision of the State of Texas located in the Eastern District of Texas. Wood County, Texas can be served through its County Judge, Lucy Hebron, at 100 S Main St, Quitman, TX 75783, or wherever she may be found.

3. Defendant Angela Speakman, Badge No. 173, is an individual residing in Quitman, Wood County, Texas and is a police officer with the Wood County Sheriff's Office and may be served at her place of employment at the Wood County Sheriff's Office

located at 402 S. Stephens Street, Quitman, Texas 75783 or wherever she may be found. Defendant Speakman is being sued in her individual capacity.

4.      Defendant Bradley Cox, Badge No. 160, is an individual residing in Quitman, Wood County, Texas and is a police officer with the Wood County Sheriff's Office and may be served at his place of employment at the Wood County Sheriff's Office located at 402 S. Stephens Street, Quitman, Texas 75783 or wherever he may be found. Defendant Cox is being sued in his individual capacity.

5.      Defendant Chelsey Fuller, Badge No. 178, is an individual residing in Quitman, Wood County, Texas and is a police officer with the Wood County Sheriff's Office and may be served at her place of employment at the Wood County Sheriff's Office located at 402 S. Stephens Street, Quitman, Texas 75783 or wherever she may be found. Defendant Fuller is being sued in her individual capacity.

6.      Defendant Mark Taylor, Badge No. 167, is an individual residing in Quitman, Wood County, Texas and is a police officer with the Wood County Sheriff's Office and may be served at his place of employment at the Wood County Sheriff's Office located at 402 S. Stephens Street, Quitman, Texas 75783 or wherever he may be found. Defendant Taylor is being sued in his individual capacity.

7.      Defendant Logan Miller, Badge No. 175, is an individual residing in Quitman, Wood County, Texas and is a police officer with the Wood County Sheriff's Office and may be served at his place of employment at the Wood County Sheriff's Office located at 402 S. Stephens Street, Quitman, Texas 75783 or wherever he may be found. Defendant Miller is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

8.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants are domiciled and/or reside in the Eastern District of Texas, and all or a substantial part of the cause of action accrued in the Eastern District.

## III.
## FACTS AND ALLEGATIONS

9.    On July 3, 2018, Plaintiff Dustin Reynolds ("Reynolds") was arrested and taken to the Wood County Jail.

10.    Reynolds arrived at the Wood County Jail at 6:27 p.m. on July 3, 2018.

11.    At all times relevant to this lawsuit, Reynolds was a pretrial detainee in the Wood County Jail.

12.    Upon entry into the jail, Reynolds was non-compliant with jail deputies and staff.

13.    Defendant OIC Officer Angela Speakman ("Defendant Speakman") decided to place Reynolds in a restraint chair.

14.    Trooper Justin Harrison, Deputies Brandon Gamm and David Brown, Defendant Officers Mark Taylor ("Defendant Taylor"), Logan Miller ("Defendant Miller"), Chelsey Fuller ("Defendant Fuller"), and Officer Andrew Morrison placed Reynolds into the restraint chair.

15.    Defendant Speakman placed a spit mask onto Reynolds.

16.    The nurse standing by asks if he is under the influence of anything and the arresting officer, William Burge, said "yeah, alcohol."

17.    At 6:33 p.m., after being secured in the restraint chair, Reynolds was taken into holding cell B2.

## Jail Standards for the Use of Restraint Chairs

18.    According to the Texas Commission on Jail Standards, inmates exhibiting behavior indicating that they are a danger to themselves or others shall be managed in such a way as to minimize the threat of injury or harm. If restraints are determined to be necessary, they shall be used in a humane manner, only for the prevention of injury, and **not as a punitive measure**. (emphasis added) 37 Tex. Admin. Code § 273.6.

19.    Restraints should restrict movement of an inmate only to the degree necessary to avoid injurious behavior. 37 Tex. Admin. Code § 273.6(2).

20.    A documented observation of the inmate shall be conducted every 15 minutes, at a minimum. The observations should include an assessment of the security of the restraints and the circulation to the extremities. 37 Tex. Admin. Code § 273.6(3).

21.    The inmate should receive medical care a minimum of every 2 hours, to include changing position, exercising extremities, offering nourishment and liquids, offering toilet facilities, checking for medication needs, and taking vital signs. These checks shall be documented. 37 Tex. Admin. Code § 273.6(4).

22.    Restraints shall be removed from an inmate **at the earliest possible time** that the inmate no longer exhibits behavior necessitating restraint. (emphasis added) 37 Tex. Admin. Code § 273.6(10).

## Wood County's Practice is to Restrain Inmates Longer Than Necessary

23.    The Wood County Sheriff is the policy maker for the Wood County Jail.

24.    The Sheriff has been delegated as the policymaker for the Wood County Sheriff's Office and the Wood County Jail by the Wood County Commissioner's Court.

25.     Thomas Castloo became the Wood County Sheriff in January of 2017.

26.     At all times relevant to this lawsuit, Thomas Castloo was the Wood County Sheriff.

27.     The Wood County Sheriff, Thomas Castloo, approved the use of the restraint chair in the Wood County jail.

28.     The Wood County Sheriff, Thomas Castloo, approved the policies and guidelines for use of the restraint chair in the Wood County jail, which were created on January 23, 2018.

29.     The Wood County restraint chair policies and guidelines created on January 23, 2018 do not instruct Wood County personnel that if restraints are determined to be necessary, they shall be used in a humane manner, only for the prevention of injury, and not as a punitive measure.

30.     The Wood County restraint chair policies and guidelines created on January 23, 2018 do not instruct Wood County personnel that restraints shall be removed from an inmate at the earliest possible time that the inmate no longer exhibits behavior necessitating restraint.

31.     The use of the restraint chair constitutes a use of force.

32.     Safety Restraint Chair, Inc. manufactures the restraint chair owned and utilized by Wood County.

33.     According to Safety Restraint Chair, Inc.'s website, "[d]etainees should not be left in the SureGuard Safety Restraint Chair for more than two hours."

34.     According to Safety Restraint Chair, Inc.'s website, "[t]he SureGuard Safety Restraint Chair should never be used as a means of punishment."

35.    However, Wood County routinely used the restraint chair as a means of punishment by restraining inmates in the chair for extended periods after the inmate is no longer exhibiting behavior necessitating restraint.

36.    From February 19, 2018 through July 26, 2019, Wood County used a restraint chair on inmates 51 times.

37.    Of those 51 restraints, 43 inmates were restrained for over 2 hours, in violation of Texas Commission on Jail Standards and Safety Restraint Chair, Inc.'s policies.[1]

38.    On March 26, 2018, Wood County placed an inmate in the restraint chair for **6 hours and 16 minutes**.

39.    On April 20, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 10 minutes**.

40.    On April 23, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 36 minutes**.

41.    On April 29, 2018, Wood County placed an inmate in the restraint chair for **26 hours and 5 minutes**.

42.    On May 7, 2018, Wood County placed an inmate in the restraint chair for **7 hours and 46 minutes**.

43.    On May 25, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 35 minutes**.

44.    On June 6, 2018, Wood County placed an inmate in the restraint chair for **10 hours and 40 minutes**.

---

[1] Of the 8 instances where Wood County did not document using the restraint chair for over 2 hours, there were two instances where it was documented that the inmate was removed right at the 2-hour mark. On March 6, 2019: inmate was removed after 1 hour and 59 minutes. On March 23, 2019: inmate was removed after 2 hours 0 minutes.

45.     On June 8, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 23 minutes**.

46.     On June 10, 2018, Wood County placed an inmate in the restraint chair for **28 hours and 45 minutes**.

47.     On June 12, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 36 minutes**.

48.     On June 14, 2018, Wood County placed an inmate in the restraint chair for **2 hours and 56 minutes**.

49.     On June 15, 2018, Wood County placed an inmate in the restraint chair for **23 hours and 51 minutes**.

50.     On June 23, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 20 minutes**.

51.     On June 29, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 39 minutes**.

52.     On July 3, 2018, Wood County placed Reynolds in the restraint chair for **14 hours and 14 minutes**, which forms the basis for this lawsuit.

53.     On July 26, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 15 minutes**.

54.     On July 28, 2018, Wood County placed an inmate in the restraint chair for **20 hours and 35 minutes**.

55.     On September 1, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 37 minutes**.

56.     On September 19, 2018, Wood County placed an inmate in the restraint chair for **16 hours and 35 minutes**.

57.    On September 24, 2018, Wood County placed an inmate in the restraint chair for **20 hours and 12 minutes**.

58.    On October 28, 2018, Wood County placed an inmate in the restraint chair for **22 hours and 54 minutes**.

59.    On November 26, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 32 minutes**.

60.    On November 30, 2018, Wood County placed an inmate in the restraint chair for **13 hours and 34 minutes**.

61.    On November 30, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 43 minutes**.

62.    On December 12, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 18 minutes**.

63.    On January 2, 2019, Wood County placed an inmate in the restraint chair for **8 hours and 47 minutes**.

64.    On February 5, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 41 minutes**.

65.    On February 8, 2019, Wood County placed an inmate in the restraint chair for **13 hours and 48 minutes**.

66.    On March 9, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 41 minutes**.

67.    On April 14, 2019, Wood County placed an inmate in the restraint chair for **9 hours and 37 minutes**.

68.    On May 4, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 16 minutes**.

69.    On May 7, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 50 minutes**.

70.    On May 14, 2019, Wood County placed an inmate in the restraint chair for **5 hours and 31 minutes**.

71.    On May 19, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 5 minutes**.

72.    On May 19, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 18 minutes**.

73.    On May 22, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 47 minutes**.

74.    On May 30, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 4 minutes**.

75.    On June 6, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 22 minutes**.

76.    On July 3, 2019, Wood County placed an inmate in the restraint chair for **5 hours and 41 minutes**.

77.    On July 6, 2019, Wood County placed an inmate in the restraint chair for **16 hours and 51 minutes**.

78.    On July 9, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 44 minutes**.

79.    On July 26, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 10 minutes**.

80.    Reynolds was no longer exhibiting behavior necessitating restraint many hours before he was released from the restraint chair.

81.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that in each of these 43 prolonged restraint chair instances, the inmate was no longer exhibiting behavior necessitating restraint long before, in most cases many hours, the inmate was released from the restraint chair.

82.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that these prolonged restraint chair instances have continued in the Wood County Jail after July 26, 2019.

83.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that during these prolonged restraint chair instances which continue after July 26, 2019, the inmates are no longer exhibiting behavior necessitating restraint long before, in most cases many hours, the inmate is released from the restraint chair.

### Reynolds was Restrained for Over Fourteen Hours in the Restraint Chair

84.    Wood County Jailers restrained Reynolds in a chair for over fourteen hours.

85.    Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, restrained Reynolds for such a long period of time pursuant to the Wood County Jail's policies, practices, and customs of using prolonged restraint on inmates who are no longer exhibiting behavior necessitating restraint.

86.    Defendants and other officers documented observations of Reynolds on the "15 MINUTE CHECK SHEET" (hereinafter referred to as the "Check Sheet") from 18:41[2] on July 3, 2018 through 08:55 on July 4, 2018.

---

[2] Military time was used on the "15 MINUTE CHECK SHEET" and will be used throughout the lawsuit for accurate reference.

## <u>Reynolds was Restrained Longer Than Necessary</u>

87.    Restraints shall be removed from an inmate **at the earliest possible time** that the inmate no longer exhibits behavior necessitating restraint. (emphasis added) 37 Tex. Admin. Code § 273.6(10).

88.    Reynolds no longer exhibited behavior necessitating restraint after the nurse gave him water and medication believed to be Tylenol at 1942 on July 3, 2018.

89.    Reynolds had been in the restraint chair for just over an hour when the nurse came gave him water and medication.

90.    After being seen by the nurse at 1942 on July 3, 2018:

   a.   Reynolds was not aggressive.

   b.   Reynolds was not violent.

   c.   Reynolds was not threatening violent behavior.

   d.   Reynolds was not combative.

   e.   Reynolds was not threatening combative behavior.

   f.   Reynolds was not yelling.

   g.   Reynolds was not cussing.

   h.   Reynolds was not attempting to pull out of the restraint chair.

   i.   Reynolds was not threatening anyone.

   j.   Reynolds was not attempting to hurt anyone.

   k.   Reynolds was not threatening to hurt himself.

   l.   Reynolds was not attempting to hurt himself.

   m.  Reynolds was not threatening to cause property damage.

   n.   Reynolds was not attempting to cause property damage.

   o.   Reynolds was not acting irrationally.

p.   Reynolds was calm.

q.   Reynolds was using an appropriate volume when he spoke.

r.   Reynolds was sitting still in the restraint chair.

91.     It was at this point that Reynolds should have been removed from the restraint chair.

92.     In fact, during this encounter at 1942, the nurse even told Reynolds that he would be let out of the restraint chair if he continued to act the way he was acting while she was talking to him.

93.     However, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not remove Reynolds from the restraint chair even though he was no longer exhibiting behavior necessitating restraint.

94.     Reynolds was not removed from the restraint chair until around 0855 on July 4, 2018 – over 13 hours later.

95.     Reynolds sat in the restraint chair for over 13 hours even though he was not exhibiting behavior necessitating restraint.

96.     Reynolds sat in the restraint chair even after a shift change occurred and the new staff did not remove him from the restraint chair even though he was not exhibiting behavior necessitating restraint.

97.     On July 4, 2018, Reynolds was removed from the restraint chair around 0855 so that he could be taken in front of the judge for his Magistrate Warning.

98.     Reynolds received his Magistrate Warning at 0913 – less than twenty minutes after he was released from the chair and given new clothes to change into from his urine-soaked shorts he had been forced to sit in, which will be explained below.

99.    It is clear that Reynolds was only removed from the restraint chair so that he could be taken before the Magistrate.

100.    Upon information and belief, Reynolds would not have been removed from the restraint chair – even though he was not exhibiting behavior necessitating restraint – had he not needed to be taken in front of the judge for his Magistrate Warning.

101.    This is because the custom and practice of the Wood County Jail is to hold inmates in restraint chairs even after they are no longer exhibiting behavior necessitating restraint and until there is another reason to remove them such as court.

### Reynolds was Denied Basic Human Necessities

102.    The inmate should receive medical care a minimum of every 2 hours, to include changing position, exercising extremities, offering nourishment and liquids, offering toilet facilities, checking for medication needs, and taking vital signs. These checks shall be documented. 37 Tex. Admin. Code § 273.6(4).

### No Water

103.    While restrained in the restraint chair for over fourteen hours, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not provide Reynolds with water

104.    At 1942 on July 3, 2018 – roughly an hour after Reynolds was placed into the restraint chair – the nurse offered Reynolds water with medication believed to be Tylenol.

105.    Reynolds was not offered water again during the next 13 hours he remained in the restraint chair.

106.    Reynolds asked Defendant Taylor and Defendant Speakman for water on multiple occasions; however, he was not given water after the nurse gave him a drink with his medication at 1942 on July 3, 2018.

107.    At 20:45, Defendant Taylor went into Reynolds' cell with a cup of water.

108.    However, Defendant Taylor placed the cup of water on top of the telephone in the cell and told Reynolds he could drink it later.

109.    Reynolds was never given the cup of water.

110.    According to the Check Sheet, Defendant Speakman marked that Reynolds was offered water at 1933, 2051, 2212, 2347, 0127, 0257, and 0443.

111.    However, Reynolds was not offered water at 1933, 2051, 2212, 2347, 0127, or 0443.

112.    No officers can even be seen taking water into Reynolds cell after Defendant Taylor at 20:45 on July 3, 2018.

113.    According to the Check Sheet, Defendant Cox marked that Reynolds was offered water at 0749 on July 4, 2018.

114.    Reynolds was not offered water at 0749.

115.    Reynolds was not offered water after the nurse offered him water with medication at 1942 on July 3, 2019.

116.    Defendant Speakman marked on the Check Sheet that Reynolds refused water at 2051, 2347, 0127, and 0443.

117.    Defendant Cox marked on the Check Sheet that Reynolds refused water at 0749.

118.    However, in reality, Reynolds never refused water.

## No Toilet

119.     While restrained in the restraint chair for over fourteen hours, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not provide Reynolds with an opportunity to use the toilet.

120.     This is in spite of the fact that Reynolds asked officers repeatedly for an opportunity to use the restroom.

121.     Officers repeatedly told Reynolds he could use the restroom "in a little while."

122.     After Reynolds asked Defendant Cox for an opportunity to use the toilet, Defendant Cox denied his request and told Reynolds to urinate on himself, adding that they had inmates that could clean it up.

123.     After holding his urine for over 12 hours and being denied an opportunity to use the restroom, Reynolds ultimately did in fact have to urinate on himself because he could not physically hold his urine any longer.

124.     Reynolds was then forced to remain in the restraint chair in his own urine for over an hour before finally being released.

125.     As a human, being forced to urinate on yourself and then sit in that urine for over an hour is unacceptable.

126.     If Reynolds were a convicted inmate, that would be cruel and unusual punishment.

127.     As a pre-trial detainee, this was a violation of his Fourteenth Amendment rights as it was obviously punishment and it served no penological or governmental purpose.

128.    After being released from the restraint chair, inmates came and mopped up Reynolds' urine – just as Defendant Cox had predicted.

129.    This can be seen on the video of the holding cells.

### No Exercise or Position Changes

130.    A documented observation of the inmate shall be conducted every 15 minutes, at a minimum. The observations should include an assessment of the security of the restraints and **the circulation to the extremities**. (emphasis added) 37 Tex. Admin. Code § 273.6(3).

131.    While restrained in the restraint chair for over fourteen hours, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not provide Reynolds with opportunities to exercise his extremities or change positions.

132.    Reynolds had to shift his weight on his hips on his own to shift positions every hour or so because none of the Defendants allowed him an opportunity to exercise his extremities.

133.    Defendant Speakman wrote on the Check Sheet that Reynolds was offered an opportunity to exercise his limbs at 2051, 2212, 2347, 0127, 0257, 0443 but that Reynolds refused to do so at 2051, 2347, 0127, and 0443.

134.    Defendant Cox wrote on the Check Sheet that Reynolds was offered an opportunity to exercise his limbs at 0600 and 0749, but that Reynolds refused to do so each time.

135.    However, Reynolds was not offered an opportunity to exercise his limbs the entire time he was in the restraint chair – over fourteen hours.

136.    When Reynolds was finally released from the restraint chair, he can be seen in the video finally being able to exercise and stretch his legs for the first time since he was placed in the restraint chair.

137.    Reynolds never refused to exercise his limbs or change positions.

## No Medical Care

138.    The inmate should receive medical care a minimum of every 2 hours, to include changing position, exercising extremities, offering nourishment and liquids, offering toilet facilities, checking for medication needs, and taking vital signs. These checks shall be documented. 37 Tex. Admin. Code § 273.6(4).

139.    The nurse tended immediately to Reynolds' bleeding knee after he was moved into the holding cell in the restraint chair.

140.    The nurse checked on Reynolds five times within the first hour he was in the restraint chair at 18:33, 18:35, 18:46, 18:49, and 19:06.

141.    The nurse checked on Reynolds one more time at 19:42.

142.    However, neither that nurse nor any other Wood County nurse checked on Reynolds again for the next 13 hours.

143.    The nurse walked by Reynolds' cell numerous times before leaving around midnight but did not check on Reynolds after 19:42 on July 3, 2018.

144.    No other nurse came to check on Reynolds.

## No Food

145.    While restrained in the restraint chair for over fourteen hours, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not provide Reynolds with food.

146.    At approximately 7:00 a.m. on July 4, 2018 – over 12 hours after being placed in the restraint chair – breakfast was being served in the holding area where Reynolds was being restrained.

147.    At 7:10 a.m., on July 4, 2019, the inmates serving the food gave a tray of food to the inmate being housed in the cell next to Reynolds.

148.    At 7:11 a.m. on July 4, 2019, the inmates serving the food gave a tray to the inmates housed in the cell on the other side of Reynolds.

149.    At 7:11 a.m. on July 4, 2019, one of the inmates asked if they could give a tray to Reynolds, but they were told not to give Reynolds a tray.

150.    When Reynolds was denied food, he was clearly not exhibiting behavior necessitating restraints.

151.    Reynolds did not receive food at any time during his over fourteen hours of being held in the restraint chair.

## Injuries

152.    Reynolds suffered physical pain and suffering as a result of being restrained in the restraint chair for over fourteen hours.

153.    Reynolds sustained cuts on his wrists, ankles, and chest from where the restraints were placed and left on his body for over fourteen hours without being moved or adjusted.

154.    Reynolds sustained bruises on his wrists, ankles, and chest from where the restraints were placed and left on his body for over fourteen hours without being moved or adjusted.

155.    Reynolds' entire body was sore for a week after being released from the chair and the Wood County Jail from being restrained in a seated position without the ability to move his arms or legs for over fourteen hours.

156.    Reynolds' back was sore for a week after being released from the chair and the Wood County Jail from being restrained in a seated position without the ability to move his arms or legs for over fourteen hours.

157.    Reynolds' bladder hurt from having to hold his urine in for over fourteen hours until he could no longer refrain from urinating on himself as directed by Defendant Cox.

158.    Reynolds felt symptoms of dehydration, including headaches, dry heaving, and body aches, after not receiving water throughout the final 13 hours that he was restrained in the restraint chair.

159.    When Reynolds was finally released from the restraint chair, his legs were numb, and he could not feel them.

160.    In addition to physical pain and suffering, Reynolds experienced mental anguish as a result of being restrained in the restraint chair for over fourteen hours.

**IV.**
**CAUSES OF ACTION**

**Count One**

**EXCESSIVE FORCE**

Violation of the Fourteenth Amendment Pursuant to 42 U.S.C § 1983
(Defendants Speakman, Taylor, Fuller, Miller, and Cox)

161.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

162.    Acting under the color of law, Defendants Speakman, Taylor, Fuller, Miller, and Cox deprived Plaintiff of the rights and privileges secured to him by the Fourteenth Amendment to the United States Constitution and by other laws of the United States to be free from excessive force.

163.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

164.    "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).

165.    A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. *Kingsley*, 135 S. Ct. at 2473.

166.    The use of the restraint chair constitutes a use of force event.

167.    In fact, the Wood County policy and guidelines for the restraint chair explicitly state that "the use of the Restraint Chair constitutes a sue of force event and will be reported as required by policy."

168.    The amount of force used by Defendants Speakman, Taylor, Fuller, Miller, and Cox against the Plaintiff as described above, specifically but not limited to, when Defendants Speakman, Taylor, Fuller, Miller, and Cox kept Reynolds in a restraint chair for over fourteen hours, was objectively unreasonable under the circumstances, was done for the purpose of punishment only, was not done to maintain order in the jail, and inflicted unnecessary injury, pain, and suffering upon Reynolds.

169.    Even after Reynolds no longer exhibited behavior necessitating restraint, Defendants Speakman, Taylor, Fuller, Miller, and Cox maintained Reynolds in the restraint chair.

170.    After just over an hour of being restrained in the restraint chair, Reynolds became calm and no longer exhibited behavior necessitating restraint – exactly what the restraint chair was designed to accomplish.

171.    However, Defendants Speakman, Taylor, Fuller, Miller, and Cox continued to restrain Reynolds in the restraint chair for an additional 13 hours.

172.    This additional 13 hours was excessive as Reynolds was no longer exhibited behavior necessitating restraint.

173.    Thus, there was no legitimate penological or governmental purpose and this was an excessive use of force in violation of Reynolds' Fourteenth Amendment rights as a pre-trial detainee.

174.    Defendants Speakman, Taylor, Fuller, Miller, and Cox's use of the restraint chair to punish Reynolds, violated the minimum operational standards established by the Texas Commission on Jail Standards for the use of restraints.

175.    Those standards provide, for example, that "If restraints are determined to be necessary, they shall be used in a humane manner, only for the prevention of injury,

and not as a punitive measure" and that "Appropriate staff should assess the inmate's medical condition" in connection with the use of restraints." 37 Tex. Admin. Cod. § 273.6.

176.   Restraint chairs should not be used as punishment; however, that is exactly what the restraint chair was used for on Reynolds on July 3rd and July 4th of 2018.

177.   This use of the restraint chair as punishment was an excessive use of force in violation of Reynolds' Fourteenth Amendment right as a pre-trial detainee.

178.   The right to be free from excessive force under the Fourteenth Amendment under these circumstances is clearly established.

179.   As a direct result of the force used against him by Defendants Speakman, Taylor, Fuller, Miller, and Cox, Reynolds has suffered physical injury, pain, and mental anguish for which he sues herein. These injuries were not caused by any other means.

## Count Two

## DELIBERATE INDIFFERENCE

Violation of the 14th Amendment Pursuant to 42 USC § 1983
(Defendants Speakman, Taylor, Fuller, Miller, and Cox)

180.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

181.   A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019).

182.   Deliberate indifference can be proven via circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

## **Substantial Risk of Serious Bodily Harm**

183.    After the first hour of being restrained, Reynolds did not receive medical care while in the restraint chair for the next thirteen hours.

184.    Reynolds was not allowed to change position or exercise his extremities while in the restraint chair for over fourteen hours.

185.    After the first hour, Reynolds was not offered water while in the restraint chair for the next thirteen hours.

186.    Reynolds asked Defendant Taylor and Defendant Speakman for water, but they denied his requests.

187.    Reynolds was not offered food – and was actually denied food when he requested it and when another inmate asked to give him food – while in the restraint chair for over fourteen hours.

188.    Reynolds was not offered toilet facilities while in the restraint chair for over twelve hours – and was even told by Defendant Cox to urinate on himself, which he ultimately had to do.

189.    After the first hour, no one checked for medication needs or took vital signs on Reynolds while he was in the restraint chair for over fourteen hours.

## **Subjective Deliberate Indifference**

190.    Defendants Speakman, Taylor, Fuller, Miller, and Cox were each aware that Reynolds was not being given food, water, medical care, opportunities to use the toilet, or opportunities to change position or exercise his extremities.

191.    Defendants Speakman, Taylor, Fuller, Miller, and Cox were each aware that Reynolds had been restrained for an extended period of time – up to fourteen hours –

without being given food, water, medical care, opportunities to use the toilet, or opportunities to change position or exercise his extremities.

192.    Despite this knowledge, Defendants Speakman, Taylor, Fuller, Miller, and Cox each chose not to give Reynolds food, water, medical care, opportunities to use the toilet, or opportunities to change position or exercise his extremities.

## Injuries

193.    As a result of not receiving medical care, not being allowed to change position or exercise his extremities, not being offered nourishment and liquids, not being offered toilet facilities, and not being checked for medication needs or having his vital signs taken, Reynolds suffered in pain as his wrists, ankles, and chest were cut and bruised by the straps, his body became sore and ached, he felt dehydrated from a lack of water, and his bladder hurt until he could no longer contain his urine and was forced to urinate on himself and then sit in that urine for over an hour.

## Count Three

## DELIBERATE INDIFFERENCE

Violation of the 14th Amendment Pursuant to 42 USC § 1983
(Defendant Cox)

194.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

195.    A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Taylor*, 946 F.3d at 221.

196.    Deliberate indifference can be proven via circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)).

## Substantial Risk of Serious Bodily Harm

197.    Reynolds was in a restraint chair and did not have the ability to use the restroom without assistance.

198.    If Reynolds were to urinate while in the restraint chair, he would be urinating on himself; thus, finding himself restrained in his own urine.

199.    His only options were to get assistance from jail personnel, hold his urine, or urinate on himself.

200.    Reynolds asked Defendant Cox for assistance in using the restroom and explained that he needed to urinate.

201.    Reynolds had been holding his urine for around 12 hours at that point.

202.    Defendant Cox denied Reynolds' request to use the restroom and instead instructed Reynolds to urinate on himself, adding that they had inmates that could clean it up.

203.    Thus, Reynolds was faced with the choice of either urinating on himself where he sat, or holding it, which he had already done for 12 hours.

204.    Reynolds ultimately urinated on himself when he could no longer refrain from urinating.

205.    Reynolds was forced to sit in his urine for over an hour.

206.    As Defendant Cox predicted, inmates came to mop the urine up.

207.    Such circumstances exposed Reynolds to a substantial risk of serious harm. *Taylor*, 946 F.3d at 224 (citing *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999).

## Subjective Deliberate Indifference

208.    Reynolds asked Defendant Cox for assistance in using the restroom due to his need to urinate after being restrained for twelve hours in the restraint chair.

209.    Defendant Cox was aware that Reynolds had been in the restraint chair for twelve hours.

210.    Defendant Cox was aware that Reynolds needed to use the restroom.

211.    Defendant Cox was aware that Reynolds could not use the restroom without assistance, absent urinating on himself where he sat in the restraint chair.

212.    Defendant Cox refused to assist Reynolds to the restroom.

213.    Instead, Defendant Cox instructed Reynolds to urinate on himself, adding that they had inmates that could clean it up.

214.    Such circumstances constitute deliberate indifference. *Taylor*, 946 F.3d at 224 (citing *Palmer*, 193 F.3d at 353).

## Injuries

215.    Reynolds' bladder hurt from having to hold his urine in for over twelve hours until he could no longer refrain from urinating on himself as directed by Defendant Cox.

216.    As a direct result of the deliberate indifference showed to him by Defendant Cox, Reynolds has suffered physical injury, pain, and mental anguish for which he sues herein.

217.    These injuries were not caused by any other means.

## Count Four

## BYSTANDER LIABILITY

Violations of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983
(Defendants Speakman, Taylor, Fuller, Miller, and Cox)

218.    Plaintiff repeats and re-alleges each and every allegation contained in the
above paragraphs as if fully repeated herein.

219.    In *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), the Fifth Circuit stated
that "an officer may be liable under § 1983 under a theory of bystander liability where the
officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2)
has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton
v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

220.    In this case, Defendants Speakman, Taylor, Fuller, Miller, and Cox were all
aware that Reynolds was no longer exhibiting behavior necessitating restraint, yet they
each did nothing to prevent the continued harm being caused by the unnecessary and
excessive restraint on Reynolds for over fourteen hours.

221.    Defendants Speakman, Taylor, Fuller, Miller, and Cox each spent an
extended period of time around Reynolds while he was restrained in the restraint chair.

222.    Defendants Speakman, Taylor, Fuller, Miller, and Cox each went into the
cell where Reynolds was restrained and saw that he was no longer exhibiting behavior
necessitating restraint.

223.    Defendants Speakman, Taylor, Fuller, Miller, and Cox each documented
their observation of Reynolds after 1942 on July 3, 2018 when Reynolds was no longer
exhibiting behavior necessitating restraint.

224.    Defendants Speakman, Taylor, Fuller, Miller, and Cox each had the ability to end the use of force on Reynolds by alerting a supervisor that Reynolds was no longer exhibiting behavior necessitating restraint.

225.    However, Defendants Speakman, Taylor, Fuller, Miller, and Cox each chose not to alert a supervisor or to take action to end the use of force on Reynolds as he remained in the restraint chair after he was no longer exhibiting behavior necessitating restraint.

226.    By unreasonably and intentionally failing to intervene, Defendants Speakman, Taylor, Fuller, Miller, and Cox demonstrated a deliberate indifference to a substantial risk of serious harm to Plaintiff's constitutional rights.

227.    Defendants Speakman, Taylor, Fuller, Miller, and Cox were aware that if they did not intervene and Reynolds was permitted to remain in the restraint chair as a form of punishment, Reynolds would suffer harm.

228.    This conscious decision not to intervene, given the knowledge Defendants Speakman, Taylor, Fuller, Miller, and Cox had at the time – that Reynolds was no longer exhibiting behavior necessitating restraint – demonstrated deliberate indifference to a substantial risk of serious harm to Reynolds' constitutional rights.

229.    As a result of this misconduct, Reynolds sustained injuries, suffered physical pain and suffering, and suffered mental anguish.

## Count Five

## DELIBERATE INDIFFERENCE

*Monell v. New York City Department of Social Services*
Violations of the 14th Amendment Pursuant to 42 USC § 1983
(Defendant Wood County, Texas)

230.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

231.    Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).

232.    A municipality may be sued under § 1983 if a constitutional violation is the result of a formal policy or governmental custom. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010).

233.    A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

234.    "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694).

235.    A decision to adopt a particular course of conduct represents official policy even if it is not intended to govern future conduct so long as the decision was made by a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

236.    Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. *Id.*

237.    Municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Pembaur*, 475 U.S. at 483, 106 S. Ct. at 1300.

238.    Additionally, the plaintiff may demonstrate a "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

239.    A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

240.    To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808).

241.    "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields*, 860 F.3d at 808.

## **Policymaker**

242.    The Wood County Sheriff is the policy maker for the Wood County Jail.

243.    The Sheriff has been delegated as the policymaker for the Wood County Sheriff's Office and the Wood County Jail by the Wood County Commissioner's Court.

244.    Thomas Castloo became the Wood County Sheriff in January of 2017.

245.    At all times relevant to this lawsuit, Thomas Castloo was the Wood County Sheriff and policymaker for the Wood County Jail.

246.    The Wood County Sheriff and policymaker for the Wood County Jail, Thomas Castloo, approved the use of the restraint chair in the Wood County jail.

247.    The Wood County Sheriff and policymaker for the Wood County Jail, Thomas Castloo, approved the policies and guidelines for use of the restraint chair in the Wood County jail, which were created on January 23, 2018.

248.    Additionally, Wood County had constructive knowledge of the following unconstitutional customs and practices of holding inmates in restraint chairs even after they are no longer exhibiting behavior necessitating restraint and using restraint chairs as a form of punishment because the policymaker, Sheriff Thomas Castloo, would have been aware of the custom and practice had he properly exercised his responsibilities of running the jail.

## **Official Policies**

249.    Wood County maintained a custom and practice of holding inmates in restraint chairs even after they are no longer exhibiting behavior necessitating restraint.

250.    Wood County maintained a custom and practice of using restraint chairs as a form of punishment, once any legitimate government objective has ceased to exist.

251.    Through the acts of Wood County's Policymaker, Sheriff Thomas Castloo, Wood County maintained an unconstitutional policy which did not instruct Wood County personnel that if restraints are determined to be necessary, they shall be used in a humane manner, only for the prevention of injury, and not as a punitive measure.

252.    Through the acts of Wood County's Policymaker, Sheriff Thomas Castloo, Wood County maintained an unconstitutional policy which did not instruct Wood County personnel that restraints shall be removed from an inmate at the earliest possible time that the inmate no longer exhibits behavior necessitating restraint.

### **Facts Supporting Official Policies**

253.    The Wood County Sheriff and policymaker for the Wood County Jail, Thomas Castloo, approved the use of the restraint chair in the Wood County jail.

254.    The Wood County Sheriff and policymaker for the Wood County Jail, Thomas Castloo, approved the policies and guidelines for use of the restraint chair in the Wood County jail, which were created on January 23, 2018.

255.    The Wood County restraint chair policies and guidelines created on January 23, 2018 do not instruct Wood County personnel that if restraints are determined to be necessary, they shall be used in a humane manner, only for the prevention of injury, and not as a punitive measure.

256.    The Wood County restraint chair policies and guidelines created on January 23, 2018 do not instruct Wood County personnel that restraints shall be removed from an inmate at the earliest possible time that the inmate no longer exhibits behavior necessitating restraint.

257. However, Wood County routinely used the restraint chair as a means of punishment by restraining inmates in the chair for extended periods after the inmate is no longer exhibiting behavior necessitating restraint.

258. From February 19, 2018 through July 26, 2019, Wood County used a restraint chair on inmates 51 times.

259. Of those 51 restraints, 43 inmates were restrained for over 2 hours, in violation of Texas Commission on Jail Standards and Safety Restraint Chair, Inc.'s policies.[3]

260. On March 26, 2018, Wood County placed an inmate in the restraint chair for **6 hours and 16 minutes**.

261. On April 20, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 10 minutes**.

262. On April 23, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 36 minutes**.

263. On April 29, 2018, Wood County placed an inmate in the restraint chair for **26 hours and 5 minutes**.

264. On May 7, 2018, Wood County placed an inmate in the restraint chair for **7 hours and 46 minutes**.

265. On May 25, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 35 minutes**.

266. On June 6, 2018, Wood County placed an inmate in the restraint chair for **10 hours and 40 minutes**.

---

[3] Of the 8 instances where Wood County did not document using the restraint chair for over 2 hours, there were two instances where it was documented that the inmate was removed right at the 2-hour mark. On March 6, 2019: inmate was removed after 1 hour and 59 minutes. On March 23, 2019: inmate was removed after 2 hours 0 minutes.

267.    On June 8, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 23 minutes**.

268.    On June 10, 2018, Wood County placed an inmate in the restraint chair for **28 hours and 45 minutes**.

269.    On June 12, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 36 minutes**.

270.    On June 14, 2018, Wood County placed an inmate in the restraint chair for **2 hours and 56 minutes**.

271.    On June 15, 2018, Wood County placed an inmate in the restraint chair for **23 hours and 51 minutes**.

272.    On June 23, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 20 minutes**.

273.    On June 29, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 39 minutes**.

274.    On July 3, 2018, Wood County placed Reynolds in the restraint chair for **14 hours and 14 minutes**, which forms the basis for this lawsuit.

275.    On July 26, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 15 minutes**.

276.    On July 28, 2018, Wood County placed an inmate in the restraint chair for **20 hours and 35 minutes**.

277.    On September 1, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 37 minutes**.

278.    On September 19, 2018, Wood County placed an inmate in the restraint chair for **16 hours and 35 minutes**.

279.    On September 24, 2018, Wood County placed an inmate in the restraint chair for **20 hours and 12 minutes**.

280.    On October 28, 2018, Wood County placed an inmate in the restraint chair for **22 hours and 54 minutes**.

281.    On November 26, 2018, Wood County placed an inmate in the restraint chair for **9 hours and 32 minutes**.

282.    On November 30, 2018, Wood County placed an inmate in the restraint chair for **13 hours and 34 minutes**.

283.    On November 30, 2018, Wood County placed an inmate in the restraint chair for **3 hours and 43 minutes**.

284.    On December 12, 2018, Wood County placed an inmate in the restraint chair for **11 hours and 18 minutes**.

285.    On January 2, 2019, Wood County placed an inmate in the restraint chair for **8 hours and 47 minutes**.

286.    On February 5, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 41 minutes**.

287.    On February 8, 2019, Wood County placed an inmate in the restraint chair for **13 hours and 48 minutes**.

288.    On March 9, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 41 minutes**.

289.    On April 14, 2019, Wood County placed an inmate in the restraint chair for **9 hours and 37 minutes**.

290.    On May 4, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 16 minutes**.

291.    On May 7, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 50 minutes**.

292.    On May 14, 2019, Wood County placed an inmate in the restraint chair for **5 hours and 31 minutes**.

293.    On May 19, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 5 minutes**.

294.    On May 19, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 18 minutes**.

295.    On May 22, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 47 minutes**.

296.    On May 30, 2019, Wood County placed an inmate in the restraint chair for **3 hours and 4 minutes**.

297.    On June 6, 2019, Wood County placed an inmate in the restraint chair for **2 hours and 22 minutes**.

298.    On July 3, 2019, Wood County placed an inmate in the restraint chair for **5 hours and 41 minutes**.

299.    On July 6, 2019, Wood County placed an inmate in the restraint chair for **16 hours and 51 minutes**.

300.    On July 9, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 44 minutes**.

301.    On July 26, 2019, Wood County placed an inmate in the restraint chair for **4 hours and 10 minutes**.

302.    Reynolds was no longer exhibiting behavior necessitating restraint many hours before he was released from the restraint chair.

303.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that in each of these 43 prolonged restraint chair instances, the inmate was no longer exhibiting behavior necessitating restraint long before, in most cases many hours, the inmate was released from the restraint chair.

304.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that these prolonged restraint chair instances have continued in the Wood County Jail after July 26, 2019.

305.    Upon information and belief, discovery into information within the knowledge of Defendant Wood County will show that during these prolonged restraint chair instances which continue after July 26, 2019, the inmates are no longer exhibiting behavior necessitating restraint long before, in most cases many hours, the inmate is released from the restraint chair.

306.    In this case, Wood County Jailers, including Defendants Speakman, Taylor, Fuller, Miller, and Cox, did not remove Reynolds from the restraint chair even though he was no longer exhibiting behavior necessitating restraint.

307.    Reynolds was not removed from the restraint chair until around 0855 on July 4, 2018 – over 13 hours after he had clearly stopped exhibiting behavior necessitating restraint.

308.    Reynolds sat in the restraint chair for over 13 more hours even though he was not exhibiting behavior necessitating restraint.

309.    Reynolds sat in the restraint chair even after a shift change occurred and the new staff did not remove him from the restraint chair even though he was not exhibiting behavior necessitating restraint.

310.    On July 4, 2018, Reynolds was removed from the restraint chair around 0855 so that he could be taken in front of the judge for his Magistrate Warning.

311.    Reynolds received his Magistrate Warning at 0913 – less than twenty minutes after he was released from the chair. and given new clothes to change into from his urine-soaked shorts he had been forced to sit in and which will be explained below.

312.    It is clear that Reynolds was only removed from the restraint chair so that he could be taken in front of the judge.

313.    Upon information and belief, Reynolds would not have been removed from the restraint chair – even though he was no longer exhibiting behavior necessitating restraint – had he not needed to be taken in front of the judge for his Magistrate Warning.

314.    This is because the custom and practice of the Wood County Jail is to hold inmates in restraint chairs even after they are no longer exhibiting behavior necessitating restraint and until there is another reason to remove them such as court.

**<u>Violation of Constitutional Rights Whose 'Moving Force' is the Policy</u>**

315.    As a direct result of these unconstitutional policies, practices, and customs promulgated by Wood County policymaker, Sheriff Thomas Castloo, Defendants Speakman, Taylor, Fuller, Miller, and Cox kept Reynolds in a restraint chair for over fourteen hours – thirteen of which Reynolds was no longer exhibiting behavior necessitating restraint.

316.    This prolonged restraint was done as a result of Wood County's unconstitutional polices, practices, and customs, and was objectively unreasonable under the circumstances, because it was done for the purpose of punishment only, was not done to maintain order in the jail, and inflicted unnecessary injury, pain, and suffering upon Reynolds.

317.    Even after Reynolds no longer exhibited behavior necessitating restraint, Defendants Speakman, Taylor, Fuller, Miller, and Cox maintained Reynolds in the restraint chair because that was the practice and custom of the Wood County Jail based off the official policies instituted by the Wood County policymaker, Sheriff Thomas Castloo.

318.    As a direct result of these unconstitutional policies, practices, and customs promulgated by Wood County policymaker, Sheriff Thomas Castloo, Defendants Speakman, Taylor, Fuller, Miller, and Cox violated Reynolds' Fourteenth Amendment rights as a pre-trial detainee.

## V.
## PUNITIVE DAMAGES

319.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

320.    When viewed objectively from the standpoint of the Individual Defendants, at the time of the occurrence, the Individual Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

321.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by the Individual Defendants, Plaintiff is entitled to recover punitive damages against the Individual Defendants in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

322.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

323.    Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendants Speakman, Taylor, Fuller, Miller, and Cox's use of excessive force and deliberate indifference to Plaintiff's health and safety, and Defendant Wood County's deliberately indifferent and unconstitutional policies, practices, and customs.

324.    As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against the Individual Defendants.

325.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

      a.    Physical injuries;

      b.    Physical pain and suffering; and

      c.    Emotional distress, torment, and mental anguish.

326.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

327.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

328.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF